UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD N. WOODSON, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21 C 03247 |
| v. | ) |
| | ) Judge Rebecca R. Pallmeyer |
| VILLAGE OF STEGER, IL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Ronald N. Woodson (Plaintiff) injured his back while working as a police officer for the Village of Steger, Illinois (Defendant). Woodson initially took about eight months of medical leave. At the end of that eight-month period, Woodson told Steger officials that he needed around six more months to recover, and the Village terminated his employment. Woodson filed a seven-count complaint [1], challenging his termination on a number of grounds. Steger filed an answer [9] to one of Woodson's seven counts but moved to dismiss or strike [8] the other six. For the reasons explained below, that motion is granted.

## BACKGROUND

In April 2019, Ronald Woodson was hired to work as a police officer for the Village of Steger. (Compl. [1] ¶¶ 8-9.) On January 22, 2020, while Woodson was issuing a traffic ticket, he fell and injured his back. (*Id.* ¶ 11.) "[U]nder his doctor's orders," Woodson was unable to work "from approximately January 24, 2020, through September 18, 2020." (*Id.* ¶ 13.) Woodson filed a worker's compensation claim and remained employed by Steger during this time. (*Id.* ¶¶ 9, 12.) Woodson alleged that he kept his employer "informed about his condition" and that Steger officials assured him "his position was secure upon his ability to return to work." (*Id.* ¶ 16.)

On or about September 18, 2020, Woodson's doctor informed him that he needed surgery. (*Id.* ¶ 14.) Woodson alleged that "[t]he estimated time off work needed to recover from surgery

would be six months." (*Id.*) "Shortly after it was determined [Woodson] would require surgery with a recovery time of six months," however, he "was promptly terminated on September 22, 2020, without expla[nation]." (*Id.* ¶ 17.)

Woodson next alleged that he

> complained to his supervisors and employer regarding his differential treatment due to his disability and engaging in protected activity in violation of the ADA, as well as due to retaliation for seeking medical care and filing a workers' compensation claim for injury to his back sustained at work on or about January 22, 2020.

(*Id.* ¶ 18.) Woodson does not allege any particular "differential treatment" or "retaliation" other than his termination. Woodson also does not specify *when* he complained to his supervisors. Given that he remained employed during an eight-month leave, and the only adverse action alleged was termination, the court presumes that Woodson complained to Steger personnel after learning he had lost his job.[1]

Finally, Woodson alleged that Steger "could have easily given [him] a reasonable accommodation to allow [him] to fully recover from his work-sustained injury and surgery." (*Id.* ¶ 21.) Woodson does not specify what accommodation Steger could have provided. Given that he alleged he would need six months "time off work," the court presumes the accommodation he desired was to remain employed—or for his job to remain open—while he was off the job for that period of time.[2]

---

[1] Later in the complaint, Woodson alleged that "*[a]fter* making the above-referenced complaints, [he] was subjected to differential treatment *and was terminated*." (Compl. ¶ 45 (emphasis added).) Woodson also alleged that he was "complaining to Defendant . . . regarding Defendant's . . . behavior *as outlined above*." (*Id.* ¶ 35 (emphasis added).) Again, the only action taken by Steger that is outlined in the complaint and that Woodson might complain about was his termination. If Woodson meant to plead that he was terminated *after* making a complaint, he would need to plead facts regarding what it was that he complained about. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (finding insufficient, under Federal Rule of Procedure 8(a)(2), "a naked assertion . . . without some further factual enhancement").

[2] Later in the complaint, Woodson alleged that he "could perform his job functions with a reasonable accommodation from his employer." (Compl. ¶ 25.) But "[a] pleading that offers . . . 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Woodson does not allege

Following his termination, Woodson filed a charge of discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter. (*Id.* ¶ 7.) Woodson then filed a seven-count complaint against Steger in this court. He alleged that Steger had violated his rights under the Americans with Disabilities Act (ADA), including by refusing to provide him with a reasonable accommodation and retaliating against him (Counts I, II, and III); had engaged in common law retaliation (Count IV); had retaliated against him for seeking medical care and for filing a workers' compensation claim (Count V); had violated the Employee Retirement Income Security Act (ERISA) (Count VI); and had intentionally inflicted emotional distress (Count VII). Steger filed an answer to Count V. (Answer [9].) Now before the court is Steger's motion to dismiss counts I, II, III, VI, and VII, and strike Count IV as redundant. (Mot. to Dismiss and Strike [8].)

## DISCUSSION

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *See* FED. R. CIV. P. 12(b)(6); FED. R. CIV. P. 8(A)(2). A complaint must "sufficiently give to the defendants 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court accepts the complaint's factual allegations as true and draws all reasonable inferences in plaintiff's favor, but it need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(f) permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The court may act on its own or on a motion by a party. *Id.* The court "has considerable discretion" under Rule 12(f). *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

---

*what* accommodations would allow him to perform his job as a police officer; to the contrary, he alleged that he needed six months off of work.

3

I.      **ADA Discrimination and Reasonable Accommodation (Counts I and II)**

In Woodson's first two counts, he alleged that he was terminated due to his disability (Compl. ¶ 26) and that Steger failed to provide him with a reasonable accommodation. (*Id.* ¶ 31.) The statutory provision governing these two counts states that "[n]o covered entity shall discriminate *against a qualified individual* on the basis of disability." § 12112(a) (emphasis added); *see id.* ("[D]ischarge of employees."); *id.* § (b)(5)(A) ("[N]ot making reasonable accommodations."). The Act defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, for Woodson to state a claim in Count I or II, he must allege that he could have performed the essential functions of his job as a police officer with or without a reasonable accommodation.

Woodson has not done so. He advised his employer that he needed surgery which would require six months "off work" to recover. (Compl. ¶ 14.) Woodson never states in his complaint how he could be "off work" and still perform the essential functions of his employment position. Neither does he allege any reasonable accommodation that would enable him to perform his job functions while recovering. To the extent Woodson means to suggest that six months off work is itself a reasonable accommodation, the Seventh Circuit has foreclosed that argument.[3] In *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 478 (7th Cir. 2017), the plaintiff took a 12-week medical leave under the Family Medical Leave Act, and at the end of that leave, underwent back surgery. The plaintiff informed his employer that the surgery required him to take two or three more months off work; the employer fired him. *Severson*, 872 F.3d at 478. In support of his claim under the ADA, the plaintiff in that case argued that a three-month leave of absence was a reasonable accommodation, but the district court disagreed and entered

---

        3      In his argument concerning the ADA retaliation claim (Count III), discussed below, Woodson more clearly states that his "request for an accommodation" was, in fact, six months off of work to recover from surgery. (Resp. [15] at 5 (citing Compl. ¶ 14 (alleging that "[t]he estimated time off work needed to recover from surgery would be six months")).)

summary judgment for the employer. *Id.* at 478-79. The Seventh Circuit affirmed, emphasizing that "[t]he ADA is an antidiscrimination statute, not a medical-leave entitlement." *Id.* at 479. And "[a]n employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Id.* Woodson, who had been on leave for eight months and, in September 2022, requested twice as much additional time off as did the plaintiff in *Severson*, has similarly confirmed that he is *not* a qualified individual under the ADA.

In response to the motion to dismiss, Woodson offers additional arguments, but they do not overcome the deficiencies in his complaint. He notes that a reasonable accommodation may include "job restructuring" or "reassignment to a vacant position." (Resp. [15] at 3 (quoting 42 U.S.C. § 12111(9)(B)).) And he argues that his allegations are analogous to the facts of *Fortino v. Vill. of Woodridge*, No. 17 C 5037, 2018 WL 1695363, at *1 (N.D. Ill. Apr. 7, 2018), in which another police officer fell and was injured while on the job. In *Fortino*, the court denied the defendant's motion to dismiss certain claims under the ADA because it "[a]ccept[ed] as true [plaintiff's] allegation that there were open positions for which he was qualified and to which he could have been reassigned." *Fortino*, 2018 WL 1695363, at *4. Woodson, in contrast, has not made such an allegation. There is no mention in the complaint about whether Woodson was qualified to perform work in other positions despite his need for leave, whether there were other vacant positions, or whether Woodson ever requested to be reassigned. Instead, the complaint alleges that Woodson needed to be off work, which makes his case more analogous to *Severson* than to *Fortino*.

Finally, Woodson argues that Steger failed to engage in an interactive process to discuss potential reasonable accommodations. (Resp. at 4.) But "[f]ailure of the interactive process is not an independent basis for liability under the ADA." *Severson*, 872 F.3d at 480 n.1 (quoting *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014)). That is, Woodson failed to plead that he was a qualified individual under the ADA, and thus he cannot state a reasonable accommodation claim. Since Woodson cannot claim Steger failed to provide a

5

reasonable accommodation, he cannot separately claim that Steger failed to engage in an interactive process to discuss a reasonable accommodation. Counts I and II are dismissed.

## II.  ADA Retaliation (Count III)

Unlike Woodson's first two counts, "[t]he Act's retaliation provision is not limited to protecting *qualified* individuals." *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018). The relevant ADA provision states:

> No person shall discriminate against *any* individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 122203(a) (emphasis added). To state a claim for ADA retaliation, a plaintiff must plead he engaged in protected activity, he suffered an adverse action, and that the latter was caused by the former. *See Rodrigo*, 879 F.3d at 243. Protected activities include asserting one's rights under the ADA "either by seeking accommodation or by raising a claim of discrimination due to disability." *Id.* (citing *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015)).

Woodson claimed he engaged in the protected activity of "complaining to Defendant through his superiors regarding Defendant's flagrantly inappropriate and illegal behavior as outlined above." (Compl. ¶ 35.) Woodson alleged Steger then "engaged in illegal acts of retaliation against Plaintiff, including but not limited to differential treatment and termination." (*Id.* ¶ 36.) As Steger notes in moving to dismiss this claim, the complaint is "devoid of allegations" beyond "a bare recitation of the elements of the claim." (Mot. to Dismiss and Strike at 6.)

Woodson offers little more than formulaic recitations of the elements of a retaliation claim. Woodson does not allege *when* he made his complaints or *what conduct* he complained about. And the facts he has alleged do not add up: as the court reads the complaint, it actually constructs a narrative with the requisite causation element backwards. That is, the complaint alleged that the only adverse employment action occurred on September 22, 2020, when Steger terminated

6

Woodson's job. And then in response to that adverse action, Woodson engaged in the purportedly protected activity of complaining to his (prior) supervisors. The text of the statutory provision clearly requires the protected activity to precede the adverse action, as it prohibits discrimination because an employee "*has* opposed any act" or "*made* a charge, testified, assisted, or participated" in a protected activity. § 122203(a) (emphasis added).

Woodson now argues that the statutorily protected activity he engaged in was his request for an accommodation of six months leave from work, and that the retaliatory adverse action was his termination. (Resp. at 5 (citing Compl. ¶¶ 14, 16-17).) If that is his claim, it is not apparent from his allegations, which make no reference to a request for an accommodation. Woodson alleged he "would require surgery" and that "[t]he estimated time off work needed to recover from surgery would be six months." (Compl. ¶ 14.) He alleged that he "kept his employer informed about his condition." (*Id.* ¶ 16.) He then alleged that after "it was determined" he needed surgery (by his doctor, presumably), Steger terminated his employment. (*Id.* ¶ 17.) Nowhere in these paragraphs does Woodson actually allege that he requested an accommodation of an additional six months' leave.[4]

Assuming that Woodson had requested an accommodation, he does not allege that such a request *caused* his termination. He alleged that he was terminated by unidentified official(s) at Steger who did not provide a reason for the decision. (*Id.* ¶ 17.) He then alleged that "[t]he reason Plaintiff was treated differently and ultimately terminated was because of his disability, and because he has a record of impairment, and/or because, Defendant regarded him as being disabled." (*Id.* ¶ 19.) That allegation, if true, could support a claim of disability discrimination

---

[4] Woodson's citation to *Fortino* is inapplicable here for the same reason noted above: unlike that plaintiff, Woodson did not allege he sought an accommodation (reasonable or otherwise).

along the lines of Woodson's first two counts. But it does not support a claim of retaliation. Count III is dismissed.[5]

## III. Retaliation for Seeking Medical Care and Filing a Workers' Compensation Claim (Counts IV and V)

Woodson's Count IV ("Common Law Retaliation") and Count V ("Retaliation for Seeking Medical Care and Filing a Workers' Compensation Claim") include virtually identical allegations and appear to be different ways of stating the same claim. . (Compl. ¶¶ 41-60.) For that reason, Steger seeks to strike Count IV as redundant under FED. R. CIV. P. 12(f). (Mot. to Dismiss and Strike at 1, 3, 7-9.) Woodson opposes striking Count IV because "a plaintiff can plead counts in the alternative." (Resp. at 6-7.)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any redundant . . . matter." The relevant portions of Counts IV and V are highly similar. Count IV alleges:

> Plaintiff was discharged from his position for the reasons described above, including but not limited to his disability, perceived disability, and because he complained to his superiors regarding his differential treatment due to his disability as well as due to retaliation for seeking medical care and filing a workers' compensation claim for injury to his back sustained at work on or about January 22, 2020.
> . . . .
> Defendant discharged Plaintiff in violation of the clear mandate of his federally and state-protected rights to equal treatment in the workplace under the ADA and The Illinois WORKERS' COMPENSATION ACT. Plaintiff's discharge undermined these public policies.

(Compl. ¶¶ 44, 47.) Count V alleges:

> For the reasons described above, Plaintiff was discharged from his position on September 22, 2020, in retaliation for seeking medical care and filing a workers' compensation claim for an injury to his back sustained at work.
> . . . .
> In response to Plaintiff seeking medical care and filing his workers' compensation claim, he was treated differently and ultimately was discharged by Defendant in

---

[5] Steger argues that "if [Count III] survives dismissal, the requested relief should be substantially narrowed." (Mot. to Dismiss and Strike at 7.) As Count III does not survive dismissal, the court declines to consider the parties' arguments concerning Woodson's requested relief.

>violation of the Illinois Workers' Compensation Act, 820 ILCS 305, et. seq. and *Kelsay v. Motorola Inc.*, 74 Ill.2d 172 (1878).

(Compl. ¶¶ 55, 57.)

Both counts allege Defendant retaliated against Woodson for seeking medical care and for filing a workers' compensation claim, and both allege a violation of the Illinois Workers' Compensation Act. Count IV is indeed redundant *except* that it additionally alleges Woodson was discharged due to his disability, perceived disability, and complaint of differential treatment, and that these actions violated his rights under the ADA. Thus, the issue is whether or not the allegations in Count IV pertaining to retaliatory discharge based on Woodson's disability distinguish Count IV from Count V.

This issue was discussed at length by the court in *O'Connell v. Cont'l Elec. Const. Co.*, No. 11 C 2291, 2011 WL 4916464 (N.D. Ill. Oct. 17, 2011). As in this case, the plaintiff in *O'Connell* alleged he was the victim of both ADA retaliation and the tort of common law retaliatory discharge. *O'Connell*, 2011 WL 4916464, at *2, *8. The *O'Connell* court noted that the retaliatory discharge tort is a narrow exception to the general rule in Illinois that employees may be discharged for any (or no) reason. *Id.* at *8. The court further stated that a retaliatory discharge claim must be based on a violation of a clear public policy, which the plaintiff must plead with specificity. *Id.* at *8-9. Not any alleged public policy will state a claim, however. The court, citing several state and federal cases, found that "[a] significant factor in deciding whether a retaliatory discharge claim will lie in a given case is whether a statutory anti-retaliation provision provides an alternative remedy for the discharge." *Id.* at *10. And the court concluded that "the ADA's anti-retaliation provision provides [plaintiff] with a remedy for the precise injury underlying his common law retaliatory discharge claim." *Id.* The court also found, as further support for this conclusion, that the conduct at issue "reflect[ed] merely a private concern between [the employee] and [the employer] that did not implicate any larger public concerns." *Id.*

In this case, as in *O'Connell*, Plaintiff's allegations of discharge in retaliation for exercise of ADA rights do not state a claim for common law retaliatory discharge because the anti-retaliation provision of the ADA provides an adequate alternative remedy. Woodson did avail himself of the proper cause of action; in Count III, he pleaded the same allegations and sought relief under the ADA. Woodson argues that he is nevertheless pleading Count IV in the alternative.[6] Pleading in the alternative is permissible in this court. *See* FED. R. CIV. P. 8(d)(2), (3). But alternative pleading does not save Count IV because the above analysis would still apply to Count IV had Woodson not pleaded Count III; the problem for Woodson is the narrow scope of the tort of retaliatory discharge, not any inconsistency between that and another one of his claims. For these reasons, the court grants Steger's motion to strike Count IV.

## IV. ERISA (Count VI)

In Count VI, Woodson claimed that Steger terminated him "to deprive him of continued participation in Defendant's funded employee welfare and benefits program." (Compl. ¶ 64.) Woodson alleged that Steger's "motivation and intent . . . were discriminatory and in violation of the Employee Retirement Income Security Act." (*Id.* ¶ 65.) He claimed that "[a]s a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe financial damages, including . . . loss of pay and benefits." (*Id.* ¶ 67.) Woodson did not cite a particular provision of ERISA in his complaint, but he stated in briefing that he "alleges that Defendant discriminated against him and terminated him in order to deprive him of his continued participation in Defendant's welfare and benefits program." (Resp. at 7.) Woodson's allegations thus appear to invoke Section 510 of ERISA, which states in relevant part that

> [i]t shall be unlawful for any person to *discharge*, fine, suspend, expel, discipline, or *discriminate* against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . *or for the purpose of interfering with the attainment of any right* to which such participant may become entitled under the plan.

---

[6] Woodson's citation to *McCormick v. Kopmann*, 23 Ill. App. 2d 189, 161 N.E.2d 720 (3d Dist. 1959)—in which a state court applied state pleading standards to a matter not involving retaliatory discharge or the ADA—is not useful.

29 U.S.C. § 1140 (emphasis added).

The Seventh Circuit has long affirmed decisions by district courts that required plaintiffs, as a prerequisite to suing under ERISA, to exhaust available administrative remedies. *See, e.g.*, *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) ("As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies."); *see also Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 873 (7th Cir. 1997) ("[T]he plaintiff, as a matter of the federal common law of ERISA, would be required to exhaust his ERISA-required internal remedies . . . before being allowed to sue."). The exhaustion prerequisite "furthers the 'goals of minimizing the number of frivolous lawsuits' and enables the preparation of a more complete factual record for judicial review." *Zhou*, 295 F.3d at 679 (quoting *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 804, 807-08 (7th Cir. 2000)).

While there is an exception to the exhaustion requirement where further administrative appeal is futile, *see Lindemann v. Mobile Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996), Woodson did not plead futility and does not argue it now. The court does not presume that exhaustion is inevitably futile just because an employee has been terminated. *See Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991) (holding that the plaintiff failed to show that exhaustion "would have been an exercise in futility and a useless gesture" because the benefits plan at issue gave "participants the right to pursue a claim for disability benefits even after discharge"). Instead, Woodson argues that the caselaw noted above and cited by Steger "is misplaced and not applicable here." (Resp. at 7.) Woodson argues the exhaustion requirement applies to a plaintiff who "sues for the denial of actual benefits by the ERISA health plan," whereas Woodson characterizes his case as "suing for discrimination and wrongful termination in order to deprive him of his ERISA welfare plan benefits." (*Id.*) In fact, however, the Seventh Circuit has affirmed a district court's ruling that exhaustion is required even in the circumstances like Woodson's, where the plaintiff alleged discharge in violation of Section 510. *Powell*, 938 F.2d at

11

825-26. Woodson suggests his case is different because of the alleged "discrimination and wrongful termination," but Section 510 of ERISA directly addresses the situation of plaintiffs who were discharged and discriminated against to interfere with their right to benefits. Woodson does not argue that Section 510 is exempt from the exhaustion requirement. Indeed, in his lone paragraph that argues administrative exhaustion should not apply to his case, Woodson cites no legal authority. (*See* Resp. at 7.) Count VI is dismissed.

V.      **Intentional Infliction of Emotional Distress (Count VII)**

In Count VII, Woodson alleged that Steger's conduct "was both extreme and outrageous to the point that it went beyond the bounds of decency and it is to be regarded as intolerable in our society." (Compl. ¶ 69.) Woodson alleged that Steger's conduct was "intentional, willful, and wanton, and done with reckless disregard for Plaintiff's federally protected rights and Plaintiff's physical well-being." (*Id.* ¶ 71.) And Woodson alleged Steger's conduct "caused Plaintiff severe emotional distress." (*Id.* ¶ 70.)

Steger does not argue that Woodson failed to plead the elements of a claim for Intentional Infliction of Emotional Distress (IIED). Rather, Steger argues that the Illinois Human Rights Act (IHRA) preempts Woodson's IIED claim. (Mot. to Dismiss and Strike at 10.) The IHRA states that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). The IHRA prohibits employment discrimination based on a person's disability. 775 ILCS 5/1-101 *et seq.*; *see Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000). Thus, the court can exercise jurisdiction over Woodson's IIED claim only if it is not "inextricably linked" to disability discrimination. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (quoting *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 514, 687 N.E.2d 21, 22 (1997)). The "proper inquiry" is "not whether the facts that support [Plaintiff's] intentional infliction of emotional distress claim could also have supported a discrimination claim, but instead whether [Plaintiff] can prove the

elements of intentional infliction of emotional distress independent . . . of any duties not to discriminate." *Naeem*, 444 F.3d at 605.

That inquiry confirms that Woodson's IIED claim is preempted by the IHRA, as it is inextricably linked to his disability discrimination claim. Woodson's IIED claim "repeats and reasserts the allegations of all previous paragraphs" to claim that "Defendant's conduct . . . *as described above*, was both extreme and outrageous." (Compl. ¶¶ 68-69 (emphasis added).) Woodson argues that various non-discrimination allegations, strung together, can form an independent basis for an IIED claim. He points to being injured "while on duty" (*id.* ¶ 11) and that he had performed his work responsibilities "beyond" his employer's expectations. (*Id.* ¶ 10.) And he notes that after being "assured his position was secure" (*id.* ¶ 16), he was "promptly terminated . . . without explaining why." (*Id.* ¶ 17.) To begin, it is not clear that Woodson's employment termination event—which he elsewhere repeatedly connects to his disability, and the fact that he would be off work for six months recovering from surgery—can be disentangled from his disability discrimination claim. *Cf. Veazey v. LaSalle Telecomms., Inc.*, 334 Ill. App. 3d. 926, 934, 779 N.E.2d 364, 371 (1st Dist. 2002) ("There can be no disputing the fact that plaintiff's assertion that [his employer] . . . terminate[d] his employment 'because he was Black' alleges a civil rights violation within the meaning of the [IHRA]. As a consequence, no basis independent of the Act exist for imposing [tort] liability."). Woodson makes clear throughout his complaint that the basis for his termination was his disability; his new narrative—having removed Steger's motive—is unintelligible.

But even apart from the "inextricabl[e] link[ ]" to disability discrimination, Woodson's allegations do not state an IIED claim. Stripping away Steger's duty not to discriminate, Woodson has pleaded a disappointing, but not extraordinary employee termination event—far from the "extreme and outrageous" conduct necessary for stating an IIED claim. "Courts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers, or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a

cause of action." *Graham v. Commonwealth Edison Co.,* 318 Ill. App. 3d 736, 746, 742 N.E.2d 858, 867 (1st Dist. 2000) (collecting cases).

Woodson's own allegations infer that there was a reason for Steger's decision to discharge him: his need to be away from the workplace for six months. To the extent he also suggests that Steger had no reason for its decision, he cites no case where an employee, merely fired without explanation, was able to plead IIED. The only case Woodson does cite involves facts very different from the ones here. In *Doe v. Calumet City*, 161 Ill.2d 374, 393-94, 641 N.E.2d 498, 507 (1994), *overruled on other grounds*, *In re Chi. Flood Litig.*, 176 Ill.2d 179, 680 N.E.2d 265 (1997), the plaintiff was "assaulted in her apartment," and the police officer summoned to her home questioned her in a "rude, demeaning, and accusatory manner, dismissing her as 'hysterical'" and asking her "inappropriate questions." *Id.* at 394, 680 N.E.2d at 507. The plaintiff also alleged the officer declined to break down the door to enter her apartment because he did not want to be "responsible for any property damage." *Id.* The court found the officer's conduct—his treatment of the plaintiff, his refusal to break down her door, and the reasonable inference that the officer knew the plaintiff "was in an emotional state that would make her susceptible to severe emotional distress"—to be "sufficiently outrageous." *Id.* In stark contrast, Woodson's allegations simply amount to the abrupt termination of an employee after several months on leave. Count VII is dismissed.

## CONCLUSION

For the foregoing reasons, the Village of Steger's motion [8] to dismiss Counts I, II, III, VI, and VII, and strike Count IV, is granted; those counts are dismissed and stricken without prejudice. Ronald Woodson has leave to file an amended complaint within 21 days.

ENTER:

Dated: February 17, 2022

_____
REBECCA R. PALLMEYER
United States District Judge

14